Bekkering v Christiana (2020 NY Slip Op 01416)





Bekkering v Christiana


2020 NY Slip Op 01416


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

528090

[*1]Don Bekkering et al., Respondents-Appellants,
v
Jeffrey G. Christiana et al., Defendants, and Garcia Management, Appellant-Respondent.

Calendar Date: January 10, 2020

Before: Garry, P.J., Mulvey, Devine, Pritzker and Colangelo, JJ.


Trainor Law Firm, PLLC, Malta (James P. Trainor of counsel), for appellant-respondent.
Law Office of Laura E. Ayers, Delanson (Laura E. Ayers of counsel), for respondents-appellants.



Mulvey, J.
Cross appeals from an order of the Supreme Court (Kramer, J.), entered November 8, 2018 in Schenectady County, which, among other things, denied a motion by defendant Garcia Management for summary judgment dismissing the complaint against it.
Since the early 1980s, defendant Garcia Management has operated a Dunkin' Donuts franchise on property that it rents from defendants Jeffrey G. Christiana and CLJB Properties, LLC. The property is located on Mohawk Avenue in the Village of Scotia, Schenectady County and includes a 15-foot-wide alley that leads to Glen Avenue from the back of the parcel. Since 2010, plaintiff Shu Zhu Zheng has owned property that abuts the eastern boundary of the alley, on which she has operated a Chinese restaurant since 1998. Plaintiff Don Bekkering owns two parcels of property that abut the alley on its eastern boundary and one parcel that abuts on its western boundary, which he acquired at different times between 1973 and 2004 and which contain a funeral home, parking lots and apartments. It appears undisputed that, throughout the parties' operation of their respective businesses, they, their customers and their vendors have used the alley for ingress and egress to their respective properties.
In 2015, Garcia Management sought and obtained approval from defendant Village of Scotia to add a drive-through window to its establishment and to make the alley an exit-only passageway. In April 2016, plaintiffs commenced this action under RPAPL article 15 for a judgment declaring that they have acquired prescriptive or implied easements over the alley, and preventing defendants from interfering with their continued use thereof. All defendants except the Village [FN1] counterclaimed seeking declarations that plaintiffs have no easements. Garcia Management moved for summary judgment dismissing the complaint and for a declaration on its counterclaim. Plaintiffs cross-moved for summary judgment. Supreme Court denied both motions. Garcia Management appeals and plaintiffs cross-appeal.
Plaintiffs are not barred from raising their claim by the statute of limitations or the doctrine of laches. Garcia Management incorrectly asserts that the six-year catch-all statute of limitations (see CPLR 213 [1]) applies to assert an easement by prescription. This assertion is inapt, as an easement by prescription arises when a party's adverse use of the property continues for 10 years, at which point the property right vests without any formal action by a court or party (see CPLR 212 [a]; RPAPL 501 [2]; Barra v Norfolk S. Ry. Co., 75 AD3d 821, 825-826 [2010]); thus, an action pursuant to RPAPL article 15 seeks a declaration regarding property rights that already exist. As for laches, plaintiffs assert that they were unaware of any challenge to their use of the alley until late 2015 when Garcia Management sought to limit it to exit-only. Plaintiffs objected during proceedings before the Village, and their commencement of this action in April 2016 was not unduly delayed (see Matter of Kuhn v Town of Johnstown, 248 AD2d 828, 829-831 [1998]; see also Sparkling Waters Lakefront Assn., Inc. v Shaw, 42 AD3d 801, 803-804 [2007]).
Supreme Court properly denied both motions for summary judgment. Plaintiffs do not claim express easements or easements by necessity, but argue that they obtained easements by implication and prescription. "Generally, an implied easement arises upon severance of ownership when, during the unity of title, an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another part, which servitude at the time of severance is in use and is reasonably necessary for the fair enjoyment of the other part of the estate" (Minogue v Monette, 158 AD2d 843, 844 [1990] [citations omitted]). Moreover, "[a] deed describing the land being conveyed as bounded by a road owned by the grantor also impliedly grants an easement in such road or way unless the intention of the parties is to the contrary" (Cashman v Shutter, 226 AD2d 961, 962 [1996] [internal quotation marks and citation omitted]; see Brennan v Salkow, 101 AD3d 781, 782 [2012] [noting that when property is conveyed with reference to a subdivision map showing streets abutting the conveyed lot, the grant includes an easement in the abutting private streets]).
Plaintiffs rely on an 1892 filed map to support their assertion that a common grantor intended that the owners of their parcels be permitted to use the alley. Plaintiffs further rely on language in their deeds, granted many decades later, stating that their property is bounded by the alley, and arguing that such language proves that the original common grantor intended to imply an easement to them over the alley. Because the record contains only certain deeds and maps related to the relevant properties, we cannot definitively conclude that the alley was a road owned by the grantor of those parcels, such that we could find an implicit easement over the alley as a matter of law (see Palma v Mastroinanni, 276 AD2d 894, 894-895 [2000]; compare Iovine v Caldwell, 256 AD2d 974, 977-978 [1998]; Cashman v Shutter, 226 AD2d at 962-963). Further, the 1892 map alone fails to show a clear intent by the original owner to dedicate the 15-foot-wide alley for use as a street by the subsequent owners of abutting parcels within the great lot (see Klug v Jeffers, 88 App Div 246, 250 [1903]), or that such use was reasonably necessary for plaintiffs' predecessors-in-interest to enjoy their property. Even assuming that plaintiffs' assertion was accurate, the record does not contain a complete chain of title for either plaintiff's property, making it impossible to determine whether any such easement was extinguished after 1892 (see Terwilliger v Van Steenburg, 33 AD3d 1111, 1114-1115 [2006]). In fact, deeds in the record demonstrate that from some unknown point until 1971, the Village owned the alley, which was at times used as a fire lane. As a municipality cannot lose its title or rights to property held in its governmental capacity through another's adverse possession of that property (see Mazzei v Metropolitan Transp. Auth., 164 AD3d 1227, 1228 [2018]; Monthie v Boyle Rd. Assoc., 281 AD2d 15, 20 [2001]), questions exist as to whether plaintiffs' predecessors-in-interest had a right to use the alley before 1971 and, if so, whether any such right was extinguished. Based on the existence of factual questions concerning whether plaintiffs had implied easements over the alley, no party was entitled to summary judgment on that issue.
To prevail on a prescriptive easement claim, a plaintiff must show that "the use of the servient property was open, notorious, continuous, hostile and under a claim of right for the requisite 10-year period;"[FN2] proof of the other elements "generally gives rise to a presumption that the use was hostile and under a claim of right, shifting the burden of proof to the servient property owner to show that the use was permissive" (Allen v Mastrianni, 2 AD3d 1023, 1024 [2003]; see Rosenzweig v Howlan, 166 AD3d 1146, 1148 [2018]; Barra v Norfolk S. Ry. Co., 75 AD3d at 823; Cole v Rothe, 18 AD3d 1058, 1059 [2005]).[FN3] "However, permission can be inferred when the relationship between the parties is one of neighborly cooperation and accommodation, in which case no presumption of hostility will arise" (Schwengber v Hultenius, 160 AD3d 1083, 1084 [2018] [internal quotation marks and citations omitted]; see Gulati v O'Leary, 125 AD3d 1231, 1233 [2015]; Allen v Mastrianni, 2 AD3d at 1024).[FN4] "Generally, the question of implied permission is one for the factfinder to resolve" (Barra v Norfolk S. Ry. Co., 75 AD3d at 824 [citations omitted]; accord Schwengber v Hultenius, 160 AD3d at 1084; Gulati v O'Leary, 125 AD3d at 1233; see Kheel v Molinari, 165 AD3d 1576, 1578 [2018], lv dismissed 32 NY3d 1194 [2019]).
Bekkering averred that, since he purchased his first parcel in 1973, he and his customers have used the alley to enter and exit his property at least 20 times per month for funerals and several times per week for customer meetings. Zheng averred that her customers and vendors used the alley almost daily since 1998. Representatives of Garcia Management acknowledged that they were aware of such use of the alley by plaintiffs and their invitees. Thus, the use was open, notorious and continuous for more than the required 10-year period. Plaintiffs both aver that they never asked for permission, nor did anyone ever grant them permission, to use the alley. Although Garcia Management contends that it allowed plaintiffs and their customers to use the alley out of neighborly cooperation, Zheng averred that she never talked to Christiana, she hardly talked to anyone from Garcia Management and she had no relationship with defendants. Bekkering averred that he spoke to Christiana a few times over the years but never about the alley, and that, despite being civil with a principal of Garcia Management and speaking with him about the alley a few times, they were never friendly and the discussions arose because the principal was bothered by Bekkering's encroachment on the alley. Bekkering's removal of physical encroachments on three occasions does not defeat his claim for a prescriptive easement, as he merely acknowledged that his encroachments affected the owner's ability to use the alley, without in any way indicating that plaintiffs lacked the right to also use the alley. As questions of fact exist regarding whether plaintiffs' use of the alley was hostile or permissive due to neighborly accommodation, neither Garcia Management nor plaintiffs established a right to summary judgment as a matter of law on the prescriptive easement claim (see Kheel v Molinari, 165 AD3d at 1578; Schwengber v Hultenius, 160 AD3d at 1085; Barra v Norfolk S. Ry. Co., 75 AD3d at 825; Barlow v Spaziani, 63 AD3d 1225, 1227 [2009]).
Garry, P.J., Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The Village did not answer and indicated that it would take no position in this action.

Footnote 2: A claim of adverse possession contains an additional element that the occupation of the property be exclusive (see Estate of Becker v Murtagh, 19 NY3d 75, 81 [2012]). Exclusivity is not required to establish a prescriptive easement, which does not grant ownership or possession of the property, only the right to use (see Charlebois v Lobe-A Prop. Owners, 193 AD2d 916, 917 [1993]; Bova v Vinciguerra, 184 AD2d 934, 934 [1992]; McLean v Ryan, 157 AD2d 928, 930 [1990]). As such right is not incompatible with the rights of the owner and other easement holders to also use the property, it is logical that no exclusivity element exists to establish a prescriptive element.

Footnote 3: Although a plaintiff must prove these elements by clear and convincing evidence at trial, "the ultimate burden of proof after trial plays no part in the assessment of whether there are relevant factual issues presented" for purposes of deciding a motion for summary judgment (Barra v Norfolk S. Ry. Co., 75 AD3d at 824 n 3).

Footnote 4: Although similar use of the property by the general public may render the presumption of adverse use inapplicable and require a distinctive act by the claiming party "sufficient to notify the owner of the user and of [his or her] claim of right" (Tulley v Bayfront N., 286 AD2d 873, 873 [2001] [internal quotation marks and citations omitted]; see Colin Realty Co., LLC v Manhasset Pizza, LLC, 137 AD3d 838, 840 [2016], lv denied 27 NY3d 908 [2016]; Cole v Rothe, 18 AD3d at 1160; Rivermere Apts. v Stoneleigh Parkway, 275 AD2d 701, 702 [2000]), the record does not indicate that the alley was used by the general public in addition to the parties, their customers and their vendors.